Neil G. Westesen
Uriah J. Price
Griffin B. Stevens
CROWLEY FLECK PLLP
P.O. Box 10969
Bozeman, MT 59719-0969
Telephone: (406) 556-1430
Fax: (406) 556-1433
Email: nwestesen@crowleyfleck.com
       uprice@crowleyfleck.com
       gstevens@crowleyfleck.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA, GREAT FALLS DIVISION

| | |
|---|---|
| EAGLE BEAR, INC. and WILLIAM BROOKE,<br><br>Plaintiff,<br><br>vs.<br><br>THE BLACKFEET INDIAN NATION and THE BLACKFEET TRIBAL COURT,<br><br>Defendants. | Cause No. CV-21-88-GF-BMM-JTJ<br><br>**COMPLAINT** |

COMES NOW Plaintiffs Eagle Bear, Inc. ("Eagle Bear") and William Brooke (collectively "Plaintiffs"), by and through its counsel of record, and for its Complaint against Defendant Blackfeet Indian Nation ("Blackfeet Tribe") and the Blackfeet Tribal Court (collectively "Defendants"), states and alleges as follows:

1. On July 19, 2021, the Blackfeet Tribe filed suit in Blackfeet Tribal Court against Eagle Bear and Will Brooke. With that complaint, the Blackfeet Tribe is attempting to evade ongoing Bureau of Indian Affairs and Interior Board of Indian Appeals administrative proceedings regarding the interpretation and validity of a twenty-five year old lease agreement between Eagle Bear and the Blackfeet Tribe. The Bureau of Indian Affairs has already concluded that a valid and binding lease between the parties exists and that any disputes arising under that lease must be mediated and arbitrated. The Blackfeet Tribe's appeal from that decision is presently pending before the Interior Board of Indian Appeals. In an attempt to circumvent the plain language of the lease it signed, those administrative proceedings, and the Bureau of Indian Affairs' authority over lease cancellation, the Blackfeet Tribe has asked the Blackfeet Tribal Court to determine that the lease has been cancelled, to evict Eagle Bear from the leased premises, and to award significant damages against Eagle Bear and Will Brooke personally. The Blackfeet Tribal Court cannot, however, exercise jurisdiction over the claims, which are subject to arbitration and squarely subject to the authority of the Bureau of Indian Affairs, or over Will Brooke personally.

**PARTIES**

2. Eagle Bear is a Montana corporation. Its principal place of business is located in Glacier County, Montana.

3. William Brooke is the president of Eagle Bear. Mr. Brooke is not a member of the Blackfeet Tribe.

4. The Blackfeet Tribe is a federally recognized Indian Tribe.

5. The Blackfeet Tribal Court is a court of the Blackfeet Tribe in which the Blackfeet Tribe has filed a complaint against Eagle Bear and William Brooke.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the federal questions raised in this Complaint pursuant to 28 U.S.C. § 1331. Tribal Court adjudicative authority is controlled by federal law. *Plains Commerce Bank v. Long Family Land & Cattle*, 554 U.S. 316, 317-324 (2008); *Nevada v. Hicks*, 533 U.S. 353, 357-58 (2001).

7. An actual case and controversy exists between the parties as alleged herein. A declaration from this Court is proper under 28 U.S.C. § 2201.

8. Exhaustion of tribal remedies is not required because the absence of Tribal Court jurisdiction is plain and exhaustion of Tribal Court remedies would serve no purpose other than delay. *Strate v. A-1 Contractors*, 520 U.S. 438, 453 (1997); *Nevada*, 533 U.S. at 369.

9. Venue is proper in this District and Division under 28 U.S.C. § 1391(b). The Tribal Court is located in Browning, Glacier County, Montana. The Blackfeet Tribe is located in Glacier County, Montana.

## FACTUAL ALLEGATIONS

10. Eagle Bear is the operator of a KOA campground and recreational facility ("Campground") located on Indian trust lands within the boundaries of the Blackfeet Indian Reservation.

11. Eagle Bear operates the Campground pursuant to a Recreation and Business Lease Agreement ("Lease") with the Blackfeet Tribe. A true and accurate copy of the Lease, including the exhibits thereto, is attached hereto as Exhibit 1.

12. Eagle Bear and the Blackfeet Tribe entered into the Lease on April 11, 1997. The Secretary of the U.S. Department of the Interior reviewed and approved the Lease for and on behalf of the Blackfeet Tribe.

13. Since 2017, Eagle Bear and the Blackfeet Tribe have been engaged in a dispute over the Lease before various departments of the United States Department of the Interior.

14. Most recently, the Blackfeet Tribe filed a complaint ("Complaint") against Eagle Bear in the Blackfeet Tribal Court. A true and accurate copy of the Complaint, excluding the exhibits thereto, is attached hereto as Exhibit 2.

15. The Complaint is an attempt to circumvent the plain language of the Lease and the four years of administrative proceedings concerning the Lease.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

16. On August 7, 2017, the Blackfeet Tribe wrote to the Blackfeet Agency Superintendent ("Superintendent") of the U.S. Department of the Interior Bureau of Indian Affairs ("BIA") and demanded that the Department terminate the Lease. A true and accurate copy of the Blackfeet Tribe's August 7, 2017 letter is attached hereto as Exhibit 3. The Blackfeet Tribe contended that Eagle Bear had committed and failed to cure certain breaches of the Lease related to payment of rent, construction of improvements on the Lease premises, compliance with Blackfeet laws, and other Lease terms.

17. Eagle Bear disputed the Blackfeet Tribe's claims and on August 15, 2017, Eagle Bear demanded mediation and arbitration of the Blackfeet Tribe's allegations. A true and accurate copy of Eagle Bear's August 15, 2017 letter, excluding the exhibits thereto, is attached hereto as Exhibit 4.

18. Notably, with respect to arbitration and dispute resolution, the Lease included the following terms:

**THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION PURSUANT TO PARAGRAPH 24 AND EXHIBIT 24**

. . .

24. JURISDICTION AND VENUE.

(a) The parties agree and stipulate that venue and jurisdiction for enforcement of the terms of this agreement lie in the United States

Federal District Court, Great Falls Division, Great Falls, Montana, or its successor court. In the event of any dispute, controversy, or claim between the parties arising out of the terms of this agreement, upon written notice to the breaching party of the substance of the alleged dispute, controversy, or claim, and the remedies sought, the nonbreaching party shall be entitled to suspend any of its obligations hereunder to the extent of the dispute, controversy, or claim, and petition the United States Federal District Court for the District of Montana for relief as set forth in Exhibit "A" attached hereto and incorporated by reference.

. . .

## EXHIBIT "A" REMEDIES

1. DISPUTE RESOLUTION/LIMITED WAIVER OF IMMUNITY.

In the event of any dispute, controversy or claim, including a breach by either party of any of the terms of the agreement between the parties hereto arising under and/or through the terms of the lease . . . the parties agree that such dispute shall be resolved exclusively in accordance with the dispute resolution provisions set forth herein. The Tribe hereby specifically and unequivocally waives its sovereign immunity for the limited purpose of participating in any proceeding provided for under the terms of this exhibit, as well as the enforcement of a final arbitration decision in the United States District Court, District of Montana, Great Falls Division or its successor court. . . .

2. EXCLUSIVE REMEDIES, STANDARDS, NOTICE, WAIVER OF IMMUNITY.

Lessee or the Lessor (a "Party") may commence proceedings for the purpose of declaring, determining or enforcing the rights, duties or liabilities of a Party under the Lease Agreement ("Remedial Proceedings") only in accordance with the provisions of this Exhibit. Remedial Proceedings shall consist exclusively of arbitration proceedings . . . enforceable by judicial proceedings as provided in Paragraph 19 of this Exhibit.

(Ex. 1, Lease at pp. 1, 23 & Ex. A, pp. 1-2).

19. On September 7, 2017, the Superintendent responded to the Blackfeet Tribe's demand and refused to cancel the Lease. The Superintendent reasoned that "mediation and arbitration must be pursued before the lease can be cancelled for breach of contract." A true and accurate copy of the BIA's September 7, 2017 letter is attached hereto as Exhibit 5.

20. On October 17, 2017, without explanation or reasoning, the Superintendent retracted her September 7, 2017 decision. She then gave notice that, by her October 17, 2017 letter, the Lease was "hereby cancelled." A true and accurate copy of the BIA's October 17, 2017 letter is attached hereto as Exhibit 6.

21. On October 19, 2017, the Blackfeet Tribe took the position that because the Lease was "immediately cancelled" pursuant to the BIA's October 17, 2017 letter, the Tribe could "retake possession of" the Lease premises. The Blackfeet Tribe instructed Eagle Bear to vacate the premises within 30 days and that the Tribe would pursue trespass claims against Eagle Bear if it did not do so. A true and accurate copy of the Blackfeet Tribe's October 19, 2017 letter is attached hereto as Exhibit 7.

22. Eagle Bear appealed the BIA's September 7, 2017 and October 17, 2017 decisions to the Regional Director for the BIA Rocky Mountain Regional Office ("Regional Director"). True and accurate copy of Eagle Bear's Notices of

Appeal to the Regional Director, excluding the exhibits thereto, are attached hereto as Exhibits 8 and 9.

23. On April 4, 2019, the Regional Director overturned the Superintendent's October 17, 2017 decision. The Regional Director determined that the Superintendent had correctly determined in her September 7, 2017 decision that "mediation and arbitration must be pursued before the lease can be cancelled for breach of contract" and that she had incorrectly retracted that decision. The Regional Director directed the parties to "carry out the mediation and arbitration actions." A true and accurate copy of the Regional Director's April 4, 2019 decision is attached hereto as Exhibit 10.

24. The Blackfeet Tribe appealed the Regional Director's April 4, 2019 decision to the Interior Board of Indian Appeals of the U.S. Department of the Interior ("IBIA"). That appeal is currently pending before the IBIA.

25. The Blackfeet Tribe filed their opening brief to the IBIA on or about November 7, 2019. A true and accurate copy of the Blackfeet Tribe's opening brief, excluding exhibits thereto, is attached hereto as Exhibit 11.

26. In its opening brief to the IBIA, the Blackfeet Tribe summarized what it alleged was the "process leading up to the cancellation of the Lease." (Ex. 11, Blackfeet IBIA Brief at pp. 8-10). The Blackfeet Tribe identified various communications beginning in 2017 and Eagle Bear's responses. (*Id.*) It then

identified the Superintendent's October 17, 2017 letter as "cancelling the Lease." (*Id.* at p. 10). Although it acknowledged prior cancellation proceedings that had occurred in 2008, the Blackfeet Tribe did not argue that the Lease had been cancelled any earlier than October 17, 2017. (*Id.* at pp. 1, 4, 10-23).

27. On December 28, 2020, the Blackfeet Tribe moved the IBIA for expedited consideration of its appeal. The IBIA denied the Tribe's motion on February 23, 2021. A true and accurate copy of the IBIA's decision to that effect is attached hereto as Exhibit 12. The IBIA reasoned:

> The Tribe's motion is predicated on the Board issuing a decision on the merits that the Lease "has been properly cancelled" by BIA. But the Regional Director's decision concluded that the Tribe and Eagle Bear must first pursue mediation and/or arbitration before BIA may cancel the Lease, and thus <u>the Lease has not been cancelled in any decision that is final for BIA</u> . . . . In addition, even were the Board to issue a decision favorable to the Tribe in this appeal, it may involve a remand to the Regional Director for further consideration. Moreover, the Board recognizes that once it decides this appeal, there is no assurance of finality in that decision, as a party may decide to seek judicial review of the Board's decision. Finally, the Board has reviewed the subject matter and ages of the pending appeals that would be affected if this appeal were given priority. The Board is not convinced that expedited consideration of this appeal, and concomitant diversion of the Board's resources from consideration of cases older than this one, is warranted.

(Ex. 12, Order Denying Motion for Expedited Consideration, *Blackfeet Tribe of the Blackfeet Indian Reservation v. Acting Rocky Mountain Regional Director, BIA*, IBIA 19-082 (Feb. 23, 2021) (emphasis added)).

9

28.     On March 1, 2021, the Superintendent held a meeting with the Blackfeet Tribal council and Tribal attorneys "to discuss the status of the Business Lease with Eagle Bear." (Ex. 13, Letter from Crowe to Davis & Eagle Bear at p. 1 (Mar. 17, 2021). Eagle Bear had previously exercised its option to extend the Lease for an additional 25-year term, following expiration of the Lease's initial 25-year term in April 2021. (*Id*. at p. 2). The Blackfeet Tribe, in response, had belatedly purported to exercise an option to purchase the additional 25-year term. During their March 1, 2021 meeting, the Blackfeet Tribe "asked about the possibility of extending the Lease for a 3 year period and asked if this would be a reasonable amount of time for the Tribe to work through the issues at dispute and get a decision on the appeal from the IBIA." (*Id*. at p. 2). At the conclusion of the meeting, the Council asked that the Superintendent to make [sic] a decision within the next 10 days and notify the parties." (*Id*.)

29.     On March 17, 2021, the Superintendent issued a decision on the Blackfeet Tribe's request to extend the Lease for a 3 year period. The Superintendent granted the request, writing: "Action Taken: In order for the parties to legally resolve the issues at hand, additional time is required. . . . An Administrative Modification to extend the Lease for an additional 3 years has been completed and approved by the Superintendent due to the unresolved conflict

between the parties to the Lease." A true and accurate copy of the Superintendent's March 17, 2021 decision is attached hereto as Exhibit 13.

30. Eagle Bear and the Blackfeet Tribe both appealed the Superintendent's decision to the Regional Director. On August 9, 2021, the Regional Director ruled in favor of Eagle Bear and the Tribe and overturned the three-year extension holding "the Superintendent lacked the statutory and regulatory authority to unilaterally approve an Administrative Modification to extend the Lease for three years." The Regional Director's decision referenced the pending administrative action noting "due to the pending litigation before IBIA (Docket No. IBIA 19-082), the Regional Director is limited to addressing only new claims presented [in Eagle Bear's / the Tribe's] appeal." True and accurate copies of the Regional Director's August 9, 2021 decisions are attached hereto as Exhibit 15.

## THE BLACKFEET TRIBE'S TRIBAL COURT COMPLAINT

31. With its tribal court Complaint, the Blackfeet Tribe now seeks to circumvent the IBIA administrative process and obtain the relief it originally sought in its motion to the IBIA.

32. The Blackfeet Tribe filed its Complaint on or about July 19, 2021.

33. The Lease, and performance thereunder, is the focus of the Blackfeet Tribe's Complaint. In the Complaint, the Blackfeet Tribe alleges that Eagle Bear

11

has "failed to perform under the Lease" and that the Lease has been "cancelled." (Ex. 2, Complaint at ¶¶ 27-38, 45-47). However, instead of arguing that the Lease was cancelled in 2017, the Blackfeet Tribe now argues that the Lease was cancelled in 2008. (*Id*. at ¶ 47).

34. The Blackfeet Tribe further alleges that, because the Lease was cancelled in 2008, Eagle Bear has trespassed on the Lease premises and asks the Tribal Court to evict Eagle Bear from the premises and to order an accounting of Eagle Bear's payments under the Lease. (*Id*. at ¶¶ 48-57).

35. Except for the trespass cause of action and request for eviction and damages, the relief the Blackfeet Tribe seeks in its Complaint is virtually identical to the relief and claims it made to the BIA and which the Superintendent and Regional Director ordered the Blackfeet Tribe to mediate and arbitrate.

36. In fact, after filing its Tribal Court Complaint, the Blackfeet Tribe also raised its trespass and 2008 cancellation arguments to the IBIA in a "Motion to Dismiss for Mootness" purporting to withdraw all of its administrative appeals A true and accurate copy of the Blackfeet Tribe's Motion to Dismiss for Mootness, excluding the exhibits thereto, is attached hereto as Exhibit 14.

37. The Blackfeet Tribe has named William Brooke as a defendant in the Complaint, in addition to Eagle Bear. The sole basis for the Blackfeet Tribe's

12

claims against Will Brooke appear to be alleged actions Will Brooke took as president of Eagle Bear.

38. The Blackfeet Tribe has not named the BIA as a party in the Complaint. The BIA is an indispensable party to any action concerning breach or cancellation of the Lease, because the Lease is administered by the BIA and the BIA has determined that the Lease is in full force and effect.

## COUNT 1 – DECLARATORY JUDGMENT

39. Plaintiffs reallege each and every allegation in paragraphs 1 through 38, above, as though fully set forth herein.

40. The Blackfeet Tribe has unlawfully invoked the subject matter and personal jurisdiction of the Tribal Court with respect to the claims and relief the Blackfeet Tribe seeks in its Complaint.

41. The Tribal Court has no regulatory or adjudicatory authority over Plaintiffs with respect to the claims and relief the Blackfeet Tribe seeks in its Complaint.

42. The Tribal Court's exercise of jurisdiction over Plaintiffs with respect to the claims and relief the Blackfeet Tribe seeks in its Complaint violates express jurisdictional prohibitions.

43. The Tribal Court lacks adjudicatory authority over the claims and relief the Blackfeet Tribe seeks in its Complaint. Exhaustion of Tribal Court

remedies would serve no purpose other than delay. Exhaustion of Tribal Court remedies is not required or appropriate.

44. An actual controversy exists between Plaintiffs and the Blackfeet Tribe regarding the jurisdiction of the Tribal Court over the claims and relief the Blackfeet Tribe seeks in its Complaint. Declaratory and injunctive relief will effectively adjudicate the rights of the parties to this matter.

45. Plaintiffs seek a judgment from this Court declaring that the Tribal Court lacks personal jurisdiction over Will Brooke and subject matter jurisdiction over the claims and relief the Blackfeet Tribe seeks in its Complaint.

### COUNT 2 – FOR INJUNCTIVE RELIEF

46. Plaintiffs reallege each and every allegation in paragraphs 1 through 45, above, as though fully set forth herein.

47. The assertion, exercise, and maintenance of jurisdiction over the subject matter of the Complaint and over the Plaintiffs is unlawful.

48. If the Blackfeet Tribe is not enjoined from pursuing its Complaint in Tribal Court and the Tribal Court is not enjoined from exercising jurisdiction over the claims and relief the Blackfeet Tribe seeks in its Complaint, Plaintiffs will suffer irreparable harm.

49. The Lease is necessary for Eagle Bear to operate its business. Eagle Bear is in the height of its operating season, the Campground is booked with

reservations for the remainder of the season.  Guests are travelling from across the world to stay at the Campground.  Defendants' improper interference with, or attempt to exercise authority over, the Lease would cripple Eagle Bear's business.

50.    The Blackfeet Tribe should be enjoined from maintaining the claims set forth in their Complaint and from seeking relief under their Complaint in Tribal Court.

51.    The Blackfeet Tribal Court should be enjoined from entertaining or adjudicating the claims and relief the Blackfeet Tribe seeks in its Complaint.

## PRAYER FOR RELIEF

NOW THEREFORE, Eagle Bear prays for judgment as follows:

A. For declaratory judgment that the Blackfeet Tribal Court does not have jurisdiction over Plaintiffs with respect to the claims and relief the Blackfeet Tribe seeks in its Complaint;

B. For declaratory judgment that the Blackfeet Tribal Court does not have jurisdiction over the claims and relief the Blackfeet Tribe seeks in its Complaint;

C. For an injunction prohibiting the Blackfeet Tribe from maintaining the claims set forth in their Complaint before the Blackfeet Tribal Court;

D. For an injunction prohibiting the Blackfeet Tribal Court from entertaining or adjudicating the claims set forth in the Blackfeet Tribe's Complaint; and

E. For such other and further relief the Court may deem just and proper.

Dated this 10th day of August, 2021.

                        CROWLEY FLECK PLLP

                        By /s/ Neil G. Westesen
                        Neil G. Westesen
                        Uriah J. Price
                        Griffin B. Stevens
                        P.O. Box 10969
                        Bozeman, MT 59719-0969

                        Attorneys for Plaintiffs